UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE POMALES, | ) | CASE NO.  1:11CV2616 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | |
| ADRIAN HOKE, et al., | ) | |
| | ) | |
| Respondents. | ) | |

Pro se Petitioner Archie Pomales filed a petition for writ of mandamus in the United States District Court for the Southern District of West Virginia on May 9, 2011. *See Pomales v. Ballard*, No. 2:11-cv-0321 (S.D. W. Va. 2011). Petitioner, who was incarcerated at the time at Mount Olive Correctional Complex (MOCC) in West Virginia, named MOCC Warden David Ballard as respondent. He requested an order directing Ballard to show cause why a detainer issued by the State of Ohio should not be dismissed with prejudice, asserting violation of his rights under the Sixth and Fourteenth Amendments.

Upon referral from United States District Court Judge Joseph R. Goodwin, United States Magistrate Judge Mary Stanley determined Petitioner's claims were "more appropriately considered in the context of an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241." *Id*. at Doc. No. 3. She ordered the docket edited to reflect her determination and directed Petitioner to sign, verify, and file an application pursuant 28 U.S.C. § 2241.

On July 12, 2011, Petitioner complied with the Magistrate Judge's order and filed a petition for writ of habeas pursuant to 28 U.S.C. § 2241.[1] An Order to Show Cause was issued the following day. Respondent answered with a Motion for Summary Judgment, as well as a Motion to Transfer and to Amend the Caption to include the Ohio Attorney General. *Id.* at Doc. Nos. 12 & 13. Magistrate Judge Stanley denied the Motion for Summary Judgment without prejudice, and granted the Motion to Amend and to Transfer the action to the United States District Court for the Northern District of Ohio. *Id*. at Doc. No. 15. By Order dated December 1, 2011, Judge Stanley amended the case caption to include the Attorney General of Ohio and ordered the case transferred to the Northern District Court of Ohio.

The undersigned received the above-captioned case by random assignment. The matter is now before the Court for review.

**I. Background**

    **A. Procedural History**

On October 30, 1995, Petitioner was charged in the Cuyahoga County, Ohio, Court of Common Pleas with escape in violation of Ohio Revised Code § 2921.34. *See State of Ohio v. Pomales*, No. 95-CR-329576 (Comm. Pls. Cuy. Cty. 1995). Two months later, Petitioner Tarnell Pomales *aka* Archie Pomales, was named in a two count indictment issued in

---

[1] Because Petitioner was transferred from MOCC to Huttonsville Correctional Center in West Virginia, Magistrate Judge Stanley ordered that Adrian Hoke, Warden of Huttonsville Correctional Center, be substituted as the appropriate respondent. *Id*. at Doc. No. 6.

Cuyahoga County on December 6, 1995. *See State of Ohio v. Pomales*, No. 95-CR-331107 (Comm. Pls. Cuy. Cty 1995).

In the presence of his attorney, Petitioner was advised in open court of his constitutional rights regarding all pending charges against him on March 20, 1996. He withdrew his "not guilty" plea to the escape charge. *See* No. 95-CR-329576. The State then deleted the firearm specification attached to Count 1 in Case No. 95-CR-331107, and Petitioner withdrew his not guilty plea as to that Count and entered a guilty plea to robbery in violation of Ohio Revised Code § 2911.02. *See* No. 95-CR-331107. Count 2 was nolled on the recommendation of the State. *Id.*  Petitioner was referred to the probation department for a pre-sentence investigation in both cases and released on a $5,000 personal recognizance bond.

On May 8, 1996, Petitioner failed to appear in court for sentencing on the charges to which he pled guilty. The court ordered Petitioner's recognizance bond forfeited. The Clerk of Courts was further ordered to issue a Notice to Appear for Petitioner to present himself in court on or before June 8, 1996, or show cause why a judgment should not be entered against him in the amount of the recognizance.  A capias for his arrest was also issued on May 8, 1996.

In 1997, an indictment was issued in the Circuit Court of Logan County, West Virginia charging Archie Tarnell Pomales with two counts of Murder in the First Degree in violation of WV Code 61-2-1.  *See State of West Virginia v. Pomales*, No. 97-F-99 (Cir. Ct. Logan Cty. 1997).  He pled guilty to the charges on February 20, 1998.  A presentence report was completed without "community sentiment" because of Petitioner's deliberate failure to provide proper addresses.

3

The West Virginia court sentenced Petitioner on May 6, 1998 to two consecutive life terms in the West Virginia State Penitentiary. The court granted Petitioner 393 days' credit for time served, creating an effective sentencing date of April 9, 1997. The court ordered Petitioner eligible for the possibility of parole after serving a minimum of 30 years imprisonment.

A detainer against Petitioner, issued by Cuyahoga County Sheriff Gerald McFaul, dated March 3, 1999, was mailed to the Northern Regional Jail in Moundsville, West Virginia. The detainer requested two weeks' notice prior to Petitioner's release from custody in West Virginia. A copy of the warrant for his arrest was attached to the detainer.

On March 28, 2008, nine years after the detainer was issued, Petitioner filed a petition to withdraw his guilty pleas in the Cuyahoga County Court of Common Pleas. He argued that (1) he only pleaded guilty on advice of counsel; (2) he wanted to "straighten up his life" since the imposition of two life terms in West Virginia; (3) Ohio deliberately delayed the imposition of his sentence because he will not be eligible for parole until 2027 and, thus, will not be "available" in the near future; and (4) he changed his life and has a family that loves and needs him. *See Pomales*, No. CR-95-331107. The state court judge denied the motion without a hearing on April 24, 2008. *Id.*

Petitioner filed an "Omnibus Motion" in the Cuyahoga County Court of Common Pleas on May 29, 2009. The motion was docketed in both cases against him. He argued that since his April 1997 arrest in West Virginia he had made repeated attempts to assert his rights, but Ohio continued to fail to grant him a "speedy trial." Because the court and his attorney allegedly did not listen to him, Petitioner complained he had to file a pro se motion to withdraw his guilty

4

plea, albeit unsuccessfully. He argued the State had always been aware of his location, but had refused his request for a "speedy trial." Petitioner argued the State violated his rights under the Interstate Agreement on Detainers ("IAD") Act when it failed to "try him within 180 days." Finally, Petitioner maintained his court appointed attorney abandoned him without leave of court. He alleged he had not communicated with the attorney for over ten years, and had no indication the attorney was formally relieved of his duties of representation. Petitioner sought the dismissal of both indictments based on asserted violations of his rights under the IAD.

The Omnibus Motion was denied on June 8, 2009 in its entirety. The following statement was entered directly after the trial judge's ruling:

> DOCKET REFLECTS THAT DEFT ENTERED GUILTY PLEA 3/20/96, WAIVING HIS CONSTITUTIONAL RIGHTS PURSUANT TO CR. R. 11 AND FAILED TO APPEAR FOR SENTENCING. DEFT PRESENTLY SERVING LIFE SENTENCE IN WEST VIRGINIA. OHIO ARREST WARRANT REMAINS ACTIVE AND WILL BE EXECUTED UPON DEFT'S COMPLETION OF HIS W.VA. SENTENCE

*Pomales*, No. CR-95-331107 (JE of 6/9/09). Petitioner has since filed two Motions for Sentencing in the Cuyahoga County Court—one on October 21, 2010 and the other on May 25, 2011—which are still pending.

On April 15, 2011, Petitioner filed a pro se petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. *See Pomales v. Ballard*, No. 1:11CV745 (N.D. Ohio 2011) (Polster, J.). He sought to challenge the 1996 State convictions for which he entered guilty pleas. Judge Dan Aaron Polster determined Petitioner was procedurally barred from pursuing and exhausting any issues in state court regarding his State convictions. As such, Judge Polster denied the petition and dismissed the action on July 20, 2011 because Petitioner did not

establish cause to excuse his failure to properly raise his claims in state court and did not demonstrate actual prejudice to his case. *Id.* at Doc. No. 4 (Mem. of Op. of 7/20/11).

### B. Writ of Habeas Corpus Petition

Petitioner asserts he is entitled to habeas relief because the State of Ohio has violated his rights under the IAD. Specifically, he claims he has been denied his Sixth Amendment right to a speedy trial because the "Supreme Court has construed the term 'trial' to include sentencing for purposes of federal statutory construction and the Sixth Amendment." (Pet. at 6, ¶ 12., D.) Petitioner explains that he "has never been sentenced because of the West Virginia charges." (Pet. at 5, ¶ 12., B.) He argues that the State of Ohio effectively denied him the right to counsel when it denied the request for appointment of counsel he made in his 2009 Omnibus Motion. He maintains that the State's refusal to sentence him is preventing him from "making post conviction challenges to his Ohio indictment" (Pet. at 5, ¶12., C.), thus violating his perceived right to a public trial. *Id*.

## II. Analysis

### A. Initial Screening

This matter is before the Court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 51 F. App'x 517 (6th Cir. 2002). A court is required to award an application or require the respondent to answer the writ of habeas corpus, "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The Sixth Circuit has consistently held that "[t]he burden to show that he is in custody in violation of the Constitution

of the United States is on the prisoner." *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970).

### B. Jurisdiction

Prisoners may be entitled to federal habeas relief when they argue they are in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because the IAD is a congressionally sanctioned interstate compact and is thus a law of the United States, whose interpretation presents a federal question, an IAD claim is properly brought as a habeas claim. *Cuyler v. Adams*, 449 U.S. 433 (1981).

A federal writ of habeas corpus may be granted by this Court if within its jurisdiction. *See* 28 U.S.C. §2241(a). In deciding the scope of its jurisdictional reach, the Court is mindful that the writ does not act upon the prisoner who seeks relief, but upon the person who allegedly holds him or her in unlawful custody. 28 U.S.C. § 2241(a); *see Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 495 (1973). To that end, this Court can issue a writ "within its jurisdiction" as long as the prisoner's custodian can be reached by service of process, even if the prisoner himself is confined outside the court's territorial jurisdiction. *Id.*

The Supreme Court has reasoned that when Congress enacted § 2241, it never intended a "federal judge familiar with the laws and practices of [his jurisdictional state . . .  to be forced] to defend its action in a distant State and to preclude the resolution of the dispute by [that] federal judge." *Braden*, 410 U.S. at 499. Thus, as Petitioner brought this action in West Virginia, where he is confined, but attacks a detainer lodged by Ohio, the court in West Virginia "acts as agent for the demanding State." *Id*. Because West Virginia has no vested interest in the

resolution of the prisoner's attack on an Ohio detainer, it properly transferred the suit to this Court, the most convenient forum. *See* 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335 (1960).

### C. Interstate Agreement on Detainers Act

The IAD is a covenant between the enacting 48 states, the District of Columbia, and the federal government that allows a participating state to gain custody of a prisoner incarcerated in another jurisdiction in order to try that prisoner on criminal charges.[2] The IAD establishes the procedures for receiving a prisoner held in another jurisdiction, as well as sanctions for a failure to comply with those procedures. Under Article I of the IAD, it states its twofold purpose: "[T]o encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Ohio Rev. Code § 2963.30, Art. I.

Once "a detainer is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner," *United States v. Mauro*, 436 U.S. 340, 343 (1978) (emphasis added), Article III allows the prisoner to demand "the disposition of any untried indictment, information or complaint which is the subject of a detainer lodged by a party state." Ohio Rev. Code § 2963.30, Art. III. If a trial is not commenced within 180 days of the request and a continuance is not granted in open court, for good cause shown,

---

[2] The IAD is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. *See Carchman v. Nash*, 473 U.S. 716, 719 (1985). In Ohio, it is codified at Ohio Rev. Code § 2963.30.

with the prisoner or his counsel present, then the appropriate court in the jurisdiction in which the outstanding charge is pending must enter an order dismissing the criminal charges with prejudice. *Id*.

Petitioner asks that he be granted one of three forms of relief. The State court should be compelled to: (1) set aside his guilty plea and allow him to proceed to trial; (2) sentence him within the time period required to bring him to trial under the IAD; or (3) dismiss the indictments against him if he is neither sentenced or brought to trial within 180 days pursuant to the IAD. Given the procedural history of this case, Petitioner is not entitled to the relief he seeks.

### D. Guilty Plea

There is no dispute Petitioner pled guilty to the criminal charges set forth in the two Ohio indictments. He now seeks to withdraw those pleas to exercise his right to trial under the provisions of the IAD. As a matter of law, however, there is no provision in the IAD that would entitle Petitioner to relief given the circumstances of his case.

Although he entered a plea of guilty, Petitioner was entitled to challenge any errors or raise any defense that called into question the court's jurisdiction to accept his guilty plea. *See e. g., Blackledge v. Perry*, 417 U.S. 21, 30 (1974). Still, a valid guilty plea is generally regarded as a waiver of all nonjurisdictional defects or errors. *See, e.g., United States v. Cox*, 464 F.2d 937, 940 (6th Cir. 1972). This axiom of law has extended to claims arising under the IAD. *See, e.g., United States v. Palmer*, 574 F.2d 164, 167 (3d Cir.), *cert. denied*, 437 U.S. 907 (1978) ("[T]he violation of a statutory provision such as Article IV(e) is not sufficiently important to

9

deny a court jurisdiction to entertain a guilty plea where the defendant fails to raise the issue in a timely manner.") Therefore, the question is whether Petitioner's plea was valid and whether the defect he alleges is jurisdictional.

Petitioner attempted to withdraw his guilty plea twelve years after entering into an agreement with the prosecution. The trial court denied his request on the merits. While Petitioner complained he was not provided a hearing on that motion, he never appealed the court's decision. His belated attempt to seek habeas relief in this Court, pursuant to 28 U.S.C. § 2254, was also denied after he failed to assert cause or prejudice for procedurally defaulting on the claims he raised. There is no judgment declaring Petitioner's guilty plea invalid. Thus, his guilty plea remains intact.

Having entered a valid plea of guilt, Petitioner's only avenue of attack would be to assert that Respondents' violation of the IAD is a jurisdictional defect. But the Sixth Circuit has held that the rights created by the IAD are nonjurisdictional and waivable. *See United States v. Eaddy*, 595 F.2d 341 (6th Cir. 1979). A year after *Eaddy*, the court reiterated its *Eaddy* holding in *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980)(28 U.S.C. §2255) when it explained that "to allow a person to assert violations of the Agreement (IAD) beyond the trial stage, without a showing of cause . . . would . . . undercut the policy of achieving prompt and final judgments." *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981) (citing *Eaddy*, 595 F.2d at 346; *Mars*, 615 F.2d at 707).

The prisoners in *Eaddy*, *Mars*, and *Kowalak* attempted to raise challenges under the IAD either after entering a guilty plea or after trial. The Sixth Circuit viewed any belated protest under the IAD, after trial or a guilty plea, as engaging in an act contrary to the spirit of

10

the IAD. The court clarified that: "Both pleading guilty and standing trial are the sort of 'affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV(c) or (e)' that may constitute a voluntary waiver of IAD rights."[3] *Kowalak*, 645 F.2d at 537 (quoting *Eaddy*, 595 F.2d at 344). Therefore, Petitioner's entry of a valid guilty plea constituted a waiver of rights under the IAD.

In 1996, Petitioner was scheduled for sentencing as a result of his guilty plea. He would have had the opportunity to challenge his plea or to accept the sentence imposed by the court at that time. It was his willful failure to appear at his scheduled sentencing hearing that forfeited his opportunities for redress. Waiting twelve years to challenge the entry of his guilty plea dispels any implication that 'but for' the detainer filed by Ohio, he would have been sentenced sooner. Moreover, that Petitioner finally resurfaced in West Virginia, albeit on additional criminal charges in that state, strongly suggests he had no interest in remaining in Ohio for his sentencing in 1996, even if he had been aware of his rights under the IAD. Petitioner does not allege otherwise in his pleading before this Court. Even if Petitioner had not waived his rights under the IAD, however, he is not otherwise entitled to invoke the IAD because there are no untried charges remaining.

### E. Sentencing Not an "Untried Charge"

The protection afforded by the IAD is not triggered unless the state issuing the detainer has *untried charges* pending against the prisoner. *See Mauro*, 436 U.S. at 343–44;

---

[3] Article IV(c) requires that any trial made possible by the use of the Article IV(a) right shall be commenced within 120 days unless a continuance for good cause is granted in open court.

11

*Browning v. Foltz*, 837 F.2d 276, 283 (6th Cir. 1988). Petitioner's assertion that the Supreme Court considers a yet-to-be-imposed sentence the equivalent of untried charges is incorrect.

In fact, courts have split as to whether the IAD encompasses cases where a defendant has been convicted but has not yet been sentenced. The Ninth Circuit has determined that the IAD may be used to compel a state to sentence a prisoner, but in reaching that conclusion, the Court did not focus on "untried charges." Instead, it relied on the fact that the term "trial," in the speedy trial clause of the Sixth Amendment to the United States Constitution, has been construed to include "sentencing." *Tinghitella v. California*, 718 F.2d 308, 311 (9th Cir. 1983). Unpersuaded by the State's reliance on the term "untried charges,"[4] the *Tinghitella* court reasoned "the IAD itself provides that it 'shall be liberally construed so as to effectuate its purposes.' IAD, art. IX (emphasis added)." *Id.*

The Tenth Circuit addressed the applicability of *Tinghitella* in the context of a prisoner seeking relief under the IAD after trial but before sentencing. *See United States v. Coffman*, 905 F.2d 330 (10th Cir. 1990). In *Coffman*, the prisoner was serving time in Kansas when he was transferred to federal custody for trial pursuant to Articles IV and V of the IAD. He was transferred back to Kansas after trial but before sentencing. After he was returned to federal custody to be sentenced, Coffman challenged the transfers as a violation of the anti-shuttling provision of the IAD at Article IV(e), which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment

---

[4] The Ninth Circuit failed to find compelling the reasoning of California appellate courts in *People v. Mahan*, 111 Cal. App. 3d 28, 168 Cal. Rptr. 428 (3d Dist. 1980) (dictum) (IAD does not apply to prisoners who have been convicted but not sentenced) and *People v. Castoe*, 86 Cal.App.3d 484, 488–90, 150 Cal.Rptr. 237, 238–40 (1978) (dictum) (stating that IAD is inapplicable to request for sentencing, yet no indication in record that detainer had ever been lodged).

12

> pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

*Id.* at 332 (quoting IAD Art. IV(e), 18 U.S.C. App'x 2, § 2, Art. IV(e)). Relying on *Tinghitella*, Coffman argued that the federal court's failure to sentence him violated the anti-shuttling provision because his right to a timely trial was equivalent to his right to receive a timely sentence. The Tenth Circuit explicitly disagreed, stating:

> we reject equating the anti-shuttling provision's use of the word "trial" with the use of the words "untried indictment, information, or complaint." The "untried indictment, information, or complaint" language defines the reach and scope of the IAD, while the term "trial" establishes the limits of the anti-shuttling provision's application to cases within the scope of the IAD. *Cf. Carchman*, 473 U.S. at 724–26, 105 S. Ct. at 3405–06 (IAD's reach limited to charges based on "untried indictments, informations, or complaints").

*Id.* The majority of other courts that have considered this question have also decided that the term "trial" does not equate to sentencing under the IAD. *See, e.g., State of N.Y. by Coughlin v. Poe,* 835 F. Supp. 585, 590 (E.D. Okla. 1993); *see also Lanzeiri v. Stewart*, No. CV021975, 2005 WL 2449998, *9 (D. Ariz. Sep 30, 2005);  *Stow v. Horan*, No. CIV. 91-300, 1994 WL 262905, *4 (D.N.H. Jan 10, 1994); *McManus v. Borgen*, No. 04-C-0040, 2005 WL 2347296, *4 (E.D. Wis. Sep 26, 2005); *State v. Barnes*, 14 Ohio App. 3d 351, 471 N.E.2d 514 (11th Dist. Portage Cty. 1984);  *State v. Lewis*, 422 N.W.2d 768 (Minn. Ct. App. 1988); *State v. Burkett*, 876 P.2d 1144, 1147, 179 Ariz. 109, 112 (Ariz. App. Div. 1 1993); *State v. Hill*, 875 S.W.2d 278, 283 (Tenn. Crim. App. 1993): *Stephenson v. State*, 801 So.2d 34, 40 (Ala. Crim. App. 2000); *State v. Brown*, 152 Ohio App.3d 8, 786 N.E.2d 492 (Ohio App. 7 Dist., 2003); *State v. Owens*, 910 N.E.2d 1059, 1065, 181 Ohio App.3d 725 (Ohio App. 7 Dist. Mar 26, 2009). As the Tenth

Circuit explained:

> Transferring a prisoner after trial but before sentencing does not implicate the prisoner rehabilitation concerns animating the IAD to the same degree as pre-trial transfers. The IAD is designed to reduce prisoner uncertainty caused by untried indictments, informations, or complaints that may have little basis. *See Carchman v. Nash*, 473 U.S. 716, 729–30, 105 S. Ct. 3401, 3408–09, 87 L.Ed.2d 516 (1985). Although "[a] prisoner with foreknowledge of a time certain for imprisonment in the receiving state . . . presumably will more easily undergo rehabilitation than one with knowledge merely of a range of possible sentences," *Tinghitella*, 718 F.2d at 311 n.5, "[t]he uncertainty caused by the delay in sentencing is minimal when compared with the uncertainty resulting from untried charges," *People v. Housewright*, 83 Mich. App. 346, 268 N.W.2d 401, 403 (1978).

*Coffman*, 905 F.2d at 333. Other than asserting his desire to set aside his guilty plea, Petitioner never addresses how he is being prejudiced by the existing detainer. Regardless of when the State of Ohio executes its detainer warrant, the two life sentences he is serving, as imposed by West Virginia, will not be affected.

Relevant case law and the surrounding facts require denial of Petitioner's request for habeas relief. Any rights to which Petitioner may have been entitled under the IAD have been waived, and nothing in the IAD requires Ohio sentence him before his incarceration in West Virginia is completed.

## III. Conclusion

For the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 2243. The court certifies that an appeal from this decision could not be taken in good faith.[5] There is no

---

[5] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

14

basis upon which to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: June 26, 2012

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

15